```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA       )
                               )       CRIMINAL NO. 05-CR-10150-JLT
        v.                     )
                               )
ROBERT M. SMITH                )
                               )
           Defendant           )

**GOVERNMENT'S MOTION FOR AN ORDER COMPELLING THE
PRODUCTION OF DEFENDANT'S DNA SAMPLES THROUGH ORAL SWABS**

The government hereby submits this motion for an Order directing the defendant, ROBERT M. SMITH, to provide a buccal DNA sample, commonly known as an oral swab, to the government for purposes of analysis and comparison.  There is probable cause, determined by the grand jury, to believe that the defendant committed the criminal act of possession of a firearm by a felon. More specifically, there is probable cause to believe that the DNA sample sought by this motion constitutes evidence of the crime charged..

**I.   FACTS**

On November 17, 2004, Boston Police Department ("BPD") officers responded to a call reporting that two African-American males appeared to be stripping a tan-colored car of its parts in front of 56 Bowdoin Avenue, in Dorchester, Massachusetts.  The caller described the first male as wearing navy blue jogging pants with a stripe, a black scally cap and a grey jacket.  The caller described the second male as wearing blue jeans, a black jacket with a red stripe, and a blue scally cap.

BPD officers arrived at 56 Bowdoin Avenue and saw two males matching those descriptions removing parts from a gold-colored Acura Legend. The officers announced their presence, at which point one of the males, later identified as the defendant, ROBERT M. SMITH, began to run.[1] One of the officers chased after the defendant. During the course of this chase, the defendant ran through several yards and driveways in the neighborhood, and climbed over several fences, many of which were lined with barbed wire, before officers detained and arrested him. Upon arresting the defendant, officers discovered that he had sustained several fresh cuts on the palms of both hands.

Officers then retraced the defendant's path from the gold-colored Acura. At the base of one of the fences over which the defendant climbed, officers discovered a right-handed black cotton glove. At the base of the same fence officers discovered a Sturm Ruger model P95DC .9mm pistol, bearing serial number 312-50906. There was one round of .9mm FC Brand Luger ammunition in the chamber of the pistol, and six additional rounds in the clip. The pistol was warm to the touch and in pristine condition according to the officer who recovered it.

In one of the yards through which the defendant ran, officers found a matching left-handed black cotton glove. This

---

[1] The other person, Darryl Jansen Hart, was arrested at the scene. He is not charged under this indictment.

glove had several tears in the palm.

On August 30, 2005, the BPD Crime Laboratory Unit performed microscopic examinations on both of the recovered gloves. These exams revealed the presence on one of the gloves of some possible nucleated epithelial cells that would be suitable for comparative analysis (see attached Exhibits A and B).

**II.  ARGUMENT**

    **A.  The Constitution Permits the Court to Issue the Requested Order**

The Fourth Amendment permits taking DNA samples from the defendant because the sampling is minimally intrusive, the defendant has a reduced expectation of privacy while in custody, and the government has established that there is probable cause to believe that the samples constitute evidence of a crime. The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. Florida v. Jimeno, 500 U.S. 248, 250 (1991). In determining whether a compelled intrusion into one's body is unreasonable for Fourth Amendment purposes, the Court should consider the extent the medical procedure threatens the health and safety of the individual, the degree of intrusion, and the community's interest in administering justice. Schmerber v. California, 384 U.S. 757 (1966)(drawing blood from defendant in hospital pursuant to accepted medical practices is not an unreasonable search and seizure); compare Winston v. Lee, 470 U.S. 753, 760-762 (1985)

(performing surgery to remove bullet from defendant's shoulder for evidentiary purposes is unreasonable); see also Dunn v. White, 880 F.2d 1188, 1194 (10th Cir. 1989)(blood test of prisoner not unduly extensive imposition on personal privacy, particularly because expectation of such privacy in prison is diminished).[2]

In this case, taking an oral DNA sample from the defendant will be minimally intrusive, far less intrusive than the blood test that the Supreme Court allowed in Schmerber. Moreover, the sampling will take place within the medical unit at the facility

---

[2] Courts of appeal have followed the holding of Schmerber and reached conclusions consistent with Dunn. For example, in Roe v. Marcotte, 193 F.2d 72 (2d Cir. 1999), the Second Circuit, citing Schmerber and Dunn, upheld the constitutionality of a Connecticut statute that mandated the blood testing for DNA purposes of prisoners convicted of certain crimes. As in Schmerber and Dunn, the Roe court found that blood testing constituted a "minimal" Fourth Amendment intrusion.

Other courts of appeal have reached similar outcomes. See, e.g., Boling v. Romer, 101 F.3d 1336 (10th Cir. 1997) (compulsory DNA blood testing for prisoners was constitutional where blood testing was minimally intrusive and prisoners had diminished privacy rights); Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995) (mandatory blood DNA testing for certain convicted felons was constitutional where blood tests where minimally intrusive, prisoners had reduced privacy expectations and statute prescribed sampling only in a medically acceptable manner and limited recipients of test results); Jones v. Murray, 962 F.2d 302 (4th Cir. 1992) ("[P]ersons lawfully arrested on probable cause and detained lose a right of privacy from routine searches of the cavities of their bodies and their jail cells."). See also United States v. Ward, 131 F.2d 335 (3d Cir. 1997) (permitting blood testing under federal statute which permits such testing for victims of certain violent sexual crimes, where the statute limited testing to situations where victim was at risk of transmission, with notice to the defendant, and with strict confidentiality requirements for the test results).

in which the defendant is currently incarcerated pending trial, or under the supervision of that institution's medical professionals. The BPD has determined that at least one of the gloves in this case contains DNA material from which a comparative analysis with the defendant's DNA could be conducted. (See Exhibits A and B). Finally, a grand jury found probable cause to believe that the defendant possessed the gun which was recovered in close proximity to the gloves. In short, a swab of the defendant's mouth for his DNA would not be an unreasonable search.

Nor do oral swabs for DNA samples violate the Fifth Amendment privilege against self-incrimination. Compelling the defendant to submit to minimally intrusive sampling is not the "forced extraction of testimonial or communicative evidence contemplated by the Fifth Amendment." United States v. Thomann, 609 F.2d 560, 562 (1st Cir. 1979), citing United States v. Wade, 388 U.S. 218 (1966) and Schmerber. See also United States v. Ferrer, 1993 WL 501143, *1 (D. Puerto Rico 1993)(taking hair samples does not violate the Fifth Amendment).

This Court (Swartwood, M.J.) authorized oral swabs for DNA samples as recently as August 4, 2004. United States v. Pakala, 329 F.2d 178 (D.Mass. 2004); see also United States v. Brymer, et.al., No. 03-CR-10327-DPW, Docket No. 64 (D.Mass. filed Sept. 12, 2003)(Swartwood, M.J.). In Pakala, the court concluded that "[g]iven that the Defendants are under arrest, it is doubtful

that requiring [them] to submit to a DNA swab would implicate any Fourth Amendment concerns with respect to them." Id. at 181. The court there further concluded that "a swab test involves minimal intrusion and is appropriate under the circumstances." Id. As the sole prerequisite to the taking of the DNA samples, the court required something already done in this case: that the laboratory first determine that evidence recovered "contain a substance which yields a DNA profile sufficient for comparison." Id.; see Exhibits A and B.

    **B.    The All Writs Act Empowers the Court to Issue the Requested Order**

The All Writs Act, Title 28, United States Code, Section 1651(a) states in full:

> The Supreme Court and all other courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

Id. "Federal courts have long recognized that the purpose of the All Writs Act is to provide the instruments necessary to perform their duty, assuming those instruments are `agreeable' to the usages and principles of law." United States v. Li, 55 F.3d 325, 328 (7th Cir. 1994)(citing Harris v. Nelson, 394 U.S. 286, 300 (1969)).

In Li, 55 F.3d at 328, the Government requested a post-indictment order seeking handwriting exemplars from the defendant from the district court. The trial court issued the requested

order, and the defendant complied. Id. On appeal, the defendant argued that the district court lacked the authority to issue such an order post-indictment. Id. The Seventh Circuit held that the district court had the authority under the All Writs Act to issue the requested order. Id. The court reasoned that "[c]ourts may rely on this statute to issue orders necessary for conducting factual inquiries." Id. The court concluded that "[t]he post-indictment nature of the order did not diminish the trial court's authority to issue the order" in any way. Id. See also United States v. Jackman, 1997 WL 161948, *2 (D. Kan. 1997)(handwriting exemplar); Doe v. United States, 487 U.S. 201, 205 n.3 (1988)(consent directive); United States v. Rudy, 429 F.2d 993 (9th Cir. 1970) (handwriting exemplar).

It is thus clear that the All Writs Act empowers this Court to order the taking of oral swab samples from the defendant in the requested manner and for the requested purpose.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court issue an Order compelling the defendant to submit DNA samples in the form of oral swabs in the manner and under the conditions requested.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By: /s/ S. Waqar Hasib
S. WAQAR HASIB
Assistant U.S. Attorney

**Exhibit A**

**BostonPolice**
Crime Laboratory Unit
One Schroeder Plaza
Boston, MA 02120


CC #: 040624511    Case #: 04-762    District: C-11    Date of Incident: 11/17/04


Incident:       Firearm, Possession
Victim:         Commonwealth of Massachusetts
Suspect:        Robert Marcus Smith
                Darryl Janssen Hart
Investigator:   Det. Kevin Doogan, C-11


On November 23, 2004 Officer Vatchell Younger, District C-11, submitted two gloves (Items 3 and 4) to the Crime Laboratory for examination. On January 5, 2005 Officer Kenneth Gee, District C-11, submitted a bottle (Item 5) to the Crime Laboratory for examination.

## LABORATORY EXAMINATION

**Item 3-** one black knit right glove that appears worn with soil and dried vegetation adhering. The interior of the glove contains a fleece-type lining. Several small holes that appear to be from wear were observed on the cuff. Testing for the presence of blood in a brownish stain on the palm area near the wrist was negative. A portion of the interior back of the glove near the cuff was cut out and extracted into solution. Microscopic examination of the extract revealed the presence of debris and non-nucleated cellular material. The glove appears similar in appearance to Item 4.

**Item 4-** one black knit left glove that appears worn and soiled with dirt/sand and dried vegetation adhering. The interior of the glove contains a fleece-type lining. A tear/hole measuring approximately 1½ inches by ½ inch (Hole #1) surrounded by several smaller tears/holes was observed on the palm area near the thumb. The area around Hole #1 was examined using an infrared filter and stereoscopically, and no stains were observed. Testing for the presence of blood around the edges of Hole #1 was negative. A portion of the lining along the edge of Hole #1 was cut out and extracted into solution. Microscopic examination of the extract revealed the presence of debris and a few possible nucleated epithelial cells. The glove appears similar in appearance to Item 3.

*Items 3 and 4 were submitted to the Trace Evidence section for examination.*

Item 5 was submitted to the Latent Print Unit for examination.

DNA analysis of evidentiary samples will <u>not</u> be performed until DNA comparison samples from the suspects have been submitted to the Crime Laboratory.


Respectfully submitted,                    Reviewed by:

Amy N. Brodeur                             Amy Kraatz
Criminalist                                Criminalist
August 30, 2005


Cc: Det. Kevin Doogan, C-11
    ATF Agent Brian Oppedisano
    U.S. Attorney Waqar Hasib

**Exhibit B**

Case 1:05-cr-10150-JLT    Document 13-3    Filed 09/29/2005    Page 1 of 3

<u>AFFIDAVIT IN SUPPORT OF UNITED STATES' MOTION TO FOR AN ORDER COMPELLING PRODUCTION OF DEFENDANT'S DNA SAMPLES THROUGH ORAL SWABS</u>

I, Amy Brodeur, the undersigned Boston Police Department Criminalist, do hereby swear under the pains and penalties of perjury the following facts in support of the United States' motion for an order compelling the production of DNA samples of the defendant, ROBERT M. SMITH:

1. I am a Criminalist at the Boston Police Department Crime Laboratory. I have been so employed since January 2002.

2. My current duties at the Boston Police Department Crime Laboratory include examining physical evidence, performing a variety of scientific analyses, preparing reports, presenting expert witness testimony, and processing crime scenes.

3. In connection with this case (Crime Lab # 04-762), I have examined a torn glove and a vodka bottle and have determined that each of these items may be suitable for DNA analysis.

4. In order to draw further conclusions, the Boston Police Department Crime Laboratory requires a sample of Robert Marcus Smith's saliva (buccal swab) to include or exclude him through DNA analysis as a source of any DNA that may be recovered from the glove and bottle.

5. Investigators with the Boston Police Department and Suffolk County District Attorney's Office have been trained on how to properly collect and preserve a buccal, or oral, swab

for use with DNA casework, and deliver it to the BPD Crime Laboratory for analysis.

Signed under the pains and penalties of perjury this 29th day of September 2005.

*[signature]*

Amy N. Brodeur, Criminalist
Boston Police Department Crime Laboratory