UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CRIMINAL ACTION NO. 05-10150-JLT


**UNITED STATES OF AMERICA**

**v.**

**ROBERT M. SMITH**


**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**


**JANUARY 24, 2006**


**BOWLER, U.S.M.J.**

On or about May 20, 2005, defendant Robert M. Smith (the "defendant"), was arrested pursuant to a Criminal Complaint issued in this district on May 19, 2005, charging that, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, he did knowingly possess, in and affecting commerce, a firearm and ammunition, to wit: a Sturm and Ruger 9mm pistol bearing serial number 312-50906 and seven rounds of FC Brand 9mm Luger ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

1

The defendant had his initial appearance on May 20, 2005. He was represented by court appointed counsel. The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant. 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(D) and (f)(2)(A). The government moved for a three day continuance and a detention hearing was scheduled before this court on May 26, 2005.

On that date this court conducted a hearing on the issue of detention. The defendant was represented by court appointed counsel. The government called one witness speaking to the issue of detention. The defendant did not call any witnesses. At the conclusion of the evidence this court made a finding of probable cause and the defendant agreed to enter into a period of voluntary detention without prejudice.

On June 15, 2005, the Grand Jury sitting in this district returned a one count Indictment charging the defendant with being a felon in possession of a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

On December 19, 2005, the defendant, although represented by counsel, wrote a letter (Docket Entry # 16) to the court addressing the issue of bail. The letter incorrectly states that this court never made a written determination on the issue. On

May 26, 2005, this court issued a written order (Docket Entry #
7) of voluntary detention without prejudice.  As of December 19,
2005, no motion to reopen the issue of detention was filed.

In fact, between May 26, 2005 and December 19, 2005, defense
counsel appeared before the court at various status conferences
on three occasions, June 24, 2005, September 19, 2005 and October
24, 2005.  At no time was the issue of bail raised by defense
counsel.  At a status conference on December 19, 2005, defense
counsel did not appear because of a medical emergency.
Government counsel was directed to contact defense counsel to
arrange to reschedule the status conference.

On December 22, 2005 this court received a letter (Docket
Entry # 17), which was accompanied by a pamphlet entitled "Who
Really Rules the World," from an individual representing to be
the defendant's mother.  The letter addressed the issue of the
defendant's custodial status.  In response to the two letters
this court scheduled a hearing for January 4, 2006 to address the
status of the defendant's detention.

On December 27, 2005 defense counsel filed a motion seeking
the defendant's release (Docket entry # 27) and offering the
defendant's father as a personal surety.  The motion also stated
that the defendant's father would be willing to post his Brockton
home to secure the defendant's release.

On January 4, 2005 this court heard argument on the motion,

3

which was opposed by the government.  This court ordered Pretrial
Services to interview the defendant's father and to review the
issue of possible release on conditions.[1]  On January 11, 2006,
Pretrial Services provided this court with an updated report.
The matter is now ripe for determination

DISCUSSION

I.   A.  Under the provisions of 18 U.S.C. § 31
42(c), "[t]he judicial officer may not impose a financial
condition that results in the pretrial detention of the person."
Thus, a defendant must be released under the provisions of 18
U.S.C. § 3142(b) or (c), or be detained pending trial under the
provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to
18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

    Under 18 U.S.C. § 3142(e), a defendant may be ordered
detained pending trial if the judicial officer finds one of the
following three conditions to be true that: (1) by clear and
convincing evidence, after a detention hearing under the
provisions of § 3142(f), ". . . no condition or combination of
conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will
reasonably assure the safety of any other person or the community
. . .;" (2) by a preponderance of the evidence, after a detention
hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no

---

[1] After completing an interview on May 20, 2005, Pretrial Services recommended detention.

condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[2]  This determination is made by the court at the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case that:

(1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[3]

(2)  involves an offense punishable by death or life imprisonment;

---

[2]  The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.)  By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applied.  That is precisely the holding in the Second Circuit.  <u>See</u> <u>e.g.</u>, <u>United States v. Jackson</u>, 823 F.2d, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986); <u>see</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

[3]  Section 3156 of Title 18 of the United States Code defines a crime of violence as:

(A)  an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

(3)   involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[4] or

(4)   involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  See 18 U.S.C. § 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

---

[4] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  See United States v. Moss, 887 F.2d 333, 336-7 (1st Cir. 1989).

6

(2) the weight of the evidence against the accused;

(3) the history and characteristics of the person, including--

    (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).


    D.  The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced.  The government must satisfy its position with respect to risk of flight by a preponderance of the evidence and with respect to dangerousness by clear and convincing evidence.  See supra footnote 3.  This court must then

7

weigh all relevant factors [set forth under § 3142(g)] and
determine whether "any condition or combination of conditions
will reasonably assure the appearance of the [defendant] as
required and the safety of any other person and the community."
The decision is an individualized one based on all relevant
factors.  United States v. Patriarca, 948 F.2d 789, 794 (
Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88
(1st Cir. 1985).

    Moreover, one may be considered a danger to the community
even in the absence of a finding by clear and convincing evidence
that the accused will engage in physical violence.  Conversely,
as noted by the Committee on the Judiciary (Report of the
Committee on the Judiciary, United States Senate), on S. 215.
98th Congress, Report No. 98-147 (May 25, 1983):

        The concept of defendant's
        dangerousness is described throughout
        this chapter by the term "safety of
        any other person or the community."
        The reference to safety of any other
        person is intended to cover the
        situation in which the safety of a
        particular identifiable individual,
        perhaps a victim or witness, is of
        concern, while the language referring
        to the safety of the community refers
        to the danger that the defendant might
        engage in criminal activity to the
        detriment of the community.  The
        Committee intends that the concern about
        safety be given a broader construction
        than merely danger of harm involving
        physical violence....  The Committee
        also emphasizes that the risk that a
        defendant will continue to engage in

8

                    drug trafficking constitutes a danger to
                    the "safety of any other person or the
                    community."

Id. (Emphasis added; footnotes omitted); see United States v.

Patriarca, 948 F.2d 789, 792 n.2 (1st Cir. 1991) (danger to

community does not refer only to risk of physical violence); see

also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990)

(stating danger in context of 18 U.S.C. § 3142(g) not meant to

refer only to physical violence); United States v. Hawkins, 617

F.2d 59 (5th Cir. 1980), (trafficking in controlled substances).[5]

     The issue critical to determining whether to detain a

defendant is therefore, whether, with respect to the defendant,

based on the guidelines set forth supra in part C of this Order,

any condition or combination of conditions of release exist that

will reasonably assure the safety of any person and the community

and the presence of the defendant.  18 U.S.C. § 3142(e).


     E.  "Where, as here, a defendant is charged with a

controlled substance offense punishable by a maximum term of 10

years or more, the government is aided by § 3142(e)'s rebuttable

---

[5] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

flight presumption."[6]  United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  United States v. Moss, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and

---

[6] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries.  United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  Consequently, imposing "a large bond is often ineffective in deterring flight."  United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).

the other factors set forth under § 3142(g).  The defendant,
however, "bears only the burden of production."  United States v.
Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988).  As explained by
the United States Court of Appeals with regard to the statutory
presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of
> production on a defendant.  The burden of persuasion
> remains with the government.  Nevertheless, even after
> a defendant has introduced some evidence to rebut the
> flight presumption, the presumption does not disappear,
> but retains evidentiary weight--the amount depending on
> how closely defendant's case resembles the congressional
> paradigm, Jessup, 757 F.2d at 387--to be considered along
> with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also
United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is
triggered by the statutory penalty prescribed irrespective of the
actual or likely sentence imposed upon the particular defendant.
See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per
curiam).  The fact that a defendant may receive a sentence of
less than ten years does not make the presumption inapplicable.
Id. at 337.  Rather, this court may consider such a factor with
regard to the weight this court gives to the presumption.  Id. at
337.

F.  Further, the judicial officer must consider whether the
crime charged is a "crime of violence" within the meaning of 18
U.S.C. § 3156 where the government has raised 18 U.S.C. § 3142

(f)(1)(A) as a basis for pretrial detention.  Thus, where the
government moves for pretrial detention "on dangerousness
grounds, it can be ordered only in cases involving one of the
circumstances set forth in § 3142(f)(1)," United States v. Ploof,
851 F.2d 7, 11 (1st Cir. 1988), which, in this instance, involves
the circumstance of whether the offense in the case at bar is a
"crime of violence" under § 3142(f)(1)(A).

    Cases establish that the circumstances in which a defendant
committed a particular offense do not determine whether the crime
of which the defendant is accused is a "crime of violence" as
defined in 18 U.S.C. § 3156(a)(4).  Rather, this court must
categorically examine the nature of the offense to determine
whether it is or is not a "crime of violence" within the meaning
of 18 U.S.C. § 3142(f)(1)(A).  See United States v. Johnson, 704
F.Supp. 1398, 1400 (E.D. Mich. 1988) (recognizing that each
"generic offense must be categorized as either a 'crime of
violence' or not a crime of violence" under Bail Reform Act); see
also United States v. Bell, 966 F.2d 703, 706 (1st Cir. 1992)
(adopting categorical approach to assess whether offense is
"crime of violence" under sentencing guidelines).

    The Bail Reform Act's definition of the term "crime of
violence" is twofold.  An offense is a "crime of violence" if it
is:

        (A) an offense that has as an element of the offense the
        use, or attempted use, or threatened use of physical force

against the person or property of another, or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

The sentencing guidelines define the term "crime of violence" in a manner which is similar to the definition of the term in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B).[7]

This court finds that the firearms offense charged in the Indictment constitutes a "crime of violence" within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(f)(1)(A).

II.  The defendant, Robert M. Smith, Jr., is 29 years of age.  He was born in Boston on September 9, 1976 and raised in Dorchester. He graduated from South Boston High School in 1995 and attended Bunker Hill Community College.

The defendant was born to the union of Loraine Moals and Robert M. Smith, Sr.  The defendant's mother resides in Fall River and the defendant's father resides in Brockton.  The

---

[7] The sentencing guidelines define a "crime of violence" as a felony that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.C.A. § 4B1.2(1) (emphasis added).

13

defendant has two brothers residing in Fall River.

The defendant is single and has two children, ages three and ten, with Naomi Ramos ("Ms. Ramos"). Prior to being taken into state custody in November of 2004, the defendant was living with Ms. Ramos and their children at 86 Fawndale Road in Roslindale, a public housing unit leased by Ms. Ramos. The defendant stated that he has been living with Ms. Ramos since 1997, except for periods when he was incarcerated.

The defendant's employment history includes working for Personal Care as a personal attendant and periods of employment by Seigel Egg Company in Cambridge and Westcorp Millwork in Stoneham.

The defendant has a prior criminal record. As a juvenile the defendant was adjudicated to be a delinquent on charges of escape and assault and battery on a police officer. The defendant has adult convictions for malicious destruction of property, conspiracy to violate the Controlled Substances Act, manufacturing a Class B controlled substance, having a controlled substance in a school zone, distributing/dispensing a Class B controlled substance, assault and battery with a dangerous weapon, possession of a Class D controlled substance (three times), possession of a Class B controlled substance (twice), threatening, assault and battery on a police officer, trespassing, resisting arrest, operating after suspension of

14

license and operating negligently.

In addition the defendant's record reflects at least 23 defaults, two probation violations, the use of several aliases and numerous motor vehicle violations.

On January 11, 2006, Pretrial Services filed an addendum to the Pretrial Services report. At the request of this court, Pretrial Services interviewed the defendant's father, Robert M. Smith, Sr., who was proposed by defense counsel as a third party custodian.

The defendant's father was born on June 6, 1957, in Montgomery, Alabama. For the past four years he has resided at 81 Howland Street in Brockton with his wife and four stepchildren. For the last 11 years he has been employed as a custodian at Rosie's Place, a shelter for women in Boston.

According to Pretrial Services, the defendant's father was convicted of assault and battery with a dangerous weapon in the Brockton District Court. He completed a period of supervised probation between August 1, 2003 and July 30, 2004. The victim of the offense was his stepdaughter, who continues to live at the Howland Street residence, where the defendant is seeking to reside if released. Pretrial Services concluded that the defendant's father would not be an appropriate custodian.

III. The relevant evidence at the detention hearing showed the

following.

The government called Special Agent Brian Oppedisano
("Oppedisano") of the Bureau of Alcohol, Tobacco and Firearms
("ATF").  He testified that he has been so employed for the past
two and a half years and that his current responsibilities
include working with the group assigned to assist the Boston
Police Department ("BPD") with the investigation of gun crimes.
Oppedisano noted that he is the case agent assigned to the
defendant's case.  He identified his affidavit, which was
admitted as Government Exhibit # 1, in the support of the
Criminal Complaint charging the defendant.

Oppedisano testified that the defendant's case was referred
to ATF by the BPD and the Suffolk County District Attorney's
Office.  According to Oppedisano, on November 17, 2004, the BPD
received a 911 call in which the caller stated that two African
American males were stripping a car in the rear of 56 Bowdoin
Avenue in Dorchester.  Two BPD officers responded to the scene
and observed one person under the hood of a tan Acura while
another person was removing the lug nuts from the vehicle.

In further testimony Oppedisano stated that when the
officers identified themselves the person under the hood began to
run away from the area.  BPD officer Higgins ("Higgins") pursued
the individual onto Nottingham Street, over a fence with barbed
wire, and onto Rossiter Street and then to Bowdoin and Oakley

Streets, where the suspect was apprehended.  The suspect was identified as Robert Smith, the defendant.

According to Oppedisano,  Higgins was accompanied by BPD Officer Jessie Goff ("Goff"), who arrested the second suspect at the scene.  The officers then retraced the route of the foot chase, which culminated in the apprehension the defendant.  Along the route Goff discovered a black glove and a Sturm revolver in clean condition and "warm to touch" at the  fence located about ten to 12 feet from the tan Acura.  The officers followed the route of the foot pursuit to the area of a driveway located at 137 Rossiter Street, where they found a black left handed glove with tears on the palm.  Oppedisano noted that at the time of the defendant's arrest the officers observed scratches and cuts on one or both of the defendant's palms.

Oppedisano testified that he has reviewed the defendant's criminal history.  He noted that the defendant's criminal record reflects two felony convictions in the Dorchester District Court in 1995 and another in Suffolk Superior Court in 2002.  Oppedisano also testified that the defendant has used the alias of "Robert Moals" in the past.

In further testimony Oppedisano stated that the gun that was recovered has been examined by the Ballistics Unit of the BPD.  Oppedisano noted that ATF Special Agent Phillip Ball, an interstate nexus examiner, has established that the gun was

manufactured outside of Massachusetts.  In conclusion Oppedisano identified the defendant present in open court is the same person who appears in the BPD booking photo relating to the November 17, 2004 incident described above.

On cross examination defense counsel established that Oppedisano does not know the identity of the individual who made the 911 call to the BPD nor does he know the weather conditions on the day of the incident.  It was established that the incident occurred in the morning.

On further cross examination it was established that no officer actually saw the defendant with the gun or ammunition. Oppedisano testified that the glove found by the gun was a right handed glove.  He added that the gun has not been tested for fingerprints nor have the gloves been tested for DNA.


IV.  The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crime for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C), (f)(1)(D) and (f)(2)(A).  The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community.

18

In contradistinction, with regard to risk of flight the court need only find by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear.  The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.


A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The government's evidence against the defendant is substantial.  The defendant was first observed when it appears he was stripping a motor vehicle.  When the police identified themselves he fled and was apprehended after a foot chase in broad daylight through a densely populated urban area.  A loaded gun, which was described as "warm to touch," was found after an immediate search of the area where the defendant ran during the

19

chase.  Also found were gloves which had tears consistent with
what would be made by a barbed wire fence, over which the
defendant fled.

It appears that the defendant fled when approached by law
enforcement officers rather than be apprehended on the spot.  The
evidence strongly suggests that rather than be apprehended with a
firearm the defendant ran from scene and threw the weapon as he
fled.

The defendant has a long and serious criminal history
including three prior felonies.  A review of his criminal history
indicates that he been in court almost every year since his
juvenile record commenced at the age of 12.  Despite periods of
incarceration he seems to be unable to stop his pattern of
criminal behavior.

While the intentions of the defendant's father appear to be
well intended, this court does not deem the defendant an
appropriate candidate for release.  Nor is the defendant's father
an appropriate third party custodian.

Based on the totality of the evidence the government has
satisfied this court by clear and convincing evidence that no
condition or combination of conditions will reasonably assure the
safety of any person or the community if the defendant is
released.

B. <u>Risk of Flight</u>

Next, this court turns to risk of flight.

Although the defendant was born and raised in the community, this court does not believe that he can be relied upon to appear as required.  His criminal history reflects at least 23 defaults. He has defaulted in almost every case in which has been charged. He first defaulted in juvenile proceedings and he has continued the same pattern in his adult life.  There is nothing in the defendant's most recent past to indicate a change in his behavior.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.


V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition, this court has found, a least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

21

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

(1)  The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)  The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3)  On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.


    /S/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

22

23